United States v. Capoccia

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of May, two thousand thirteen.

PRESENT:
      DENNIS JACOBS,
         *Chief Judge*,
      ROSEMARY S. POOLER
         Circuit Judge.[1]

_____

UNITED STATES OF AMERICA,

         *Appellee*,

     v.                       11-4258

HOWARD SINNOTT, THOMAS J. DALY, SHIRLEY DINATALE, RODGER KOLSKY,

---

[1] The Honorable Richard C. Wesley, originally a member of this panel, did not participate in the consideration of this appeal. The two remaining members of the panel, who are in agreement, have determined the matter. <u>See</u> 28 U.S.C. § 46(d); 2d Cir. I.O.P. E.; <u>United States v. Desimone</u>, 140 F.3d 457 (2d Cir. 1998).

CAROL CAPOCCIA, CARLO SPANO,

                    *Defendants*,

ANDREW CAPOCCIA,

                    *Defendant-Appellant*.
_____

**FOR APPELLEE:**              GREGORY L. WAPLES, Assistant
                               United States Attorney (Paul J.
                               Van de Graaf, <u>on the brief</u>) <u>for</u>
                               Tristram J. Coffin, United
                               States Attorney for the District
                               of Vermont.

**FOR DEFENDANT-APPELLANT:**   STEPHANIE M. CARVLIN, Law
                               Offices of Stephanie M. Carvlin,
                               New York, NY.

     Appeal from a judgment of the United States District Court for the District of Vermont (Murtha, <u>J.</u>).
     **UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment is **AFFIRMED**.

     Defendant-appellant Andrew Capoccia appeals from the district court's imposition of a sentence of 188 months of confinement, followed by three years of supervised release, and restitution of $7,256,445.60 for his offenses associated with his fraudulent debt reduction business.  We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

     1.  Capoccia argues the government's proof at trial demonstrates that he was not guilty of Count I of the indictment, interstate transportation of stolen property, in violation of 18 U.S.C. § 2314.  He admits that he did not raise this issue during his initial criminal appeal; we affirmed his conviction. <u>See</u> <u>United States v. Capoccia</u>, 247 F. App'x 311, 318 (2d Cir. 2007).  "[W]hen a court has ruled on an issue, 'that decision should generally be adhered to by that court in subsequent stages in the same case.'" <u>United States v. Carr</u>, 557 F.3d 93, 102 (2d Cir. 2009) (quoting <u>United States v. Quintieri</u>, 306 F.3d 1217, 1225 (2d Cir. 2002)).  Law of the case bars Capoccia's challenge here.  Capoccia had "both opportunity and incentive to mount

2

[his] challenge the first time around" and simply failed to do so. Quintieri, 306 F.3d at 1232-33. In any event, the Supreme Court has expressly rejected the theory that a 18 U.S.C. § 2314 conviction requires the interstate transfer to occur *after* the property was stolen. See McElroy v. U.S., 455 U.S. 642, 657-58 (1982).

2. Capoccia argues that several of the counts of his indictment were duplicitous. See United States v. Aracri, 968 F.2d 1512, 1518 (2d Cir. 1992) (defining an indictment as duplicitous "if it joins two or more distinct crimes in a single count"). He admits that this argument was not presented prior to trial, and his delay is fatal. A claim that an indictment was duplicitous is "generally deemed to be waived if not properly raised before trial." United States v. Berardi, 629 F.2d 723, 729 (2d Cir. 1980); see Fed. R. Crim. P. 12(b)(3)(B). This rule applies so long as "'the alleged duplicitous character of the counts appears on the face of the indictment.'" United States v. Sturdivant, 244 F.3d 71, 76 (2d Cir. 2001) (emphasis removed) (quoting United States v. Viserto, 596 F.2d 531, 538 (2d Cir. 1979)). The duplicity alleged by Capoccia was visible from the outset, and he has waived any objection.

3. Capoccia's multiplicity argument is also waived. He contends that Counts 1 and 11 of his indictment both charged the same offense, in violation of the Double Jeopardy Clause. Once again, however, he failed to raise this argument before trial. "It is well-settled constitutional law that the constitutional protection against double jeopardy is a personal right and, like other constitutional rights, can be waived if it is not timely interposed at trial." Aparicio v. Artuz, 269 F.3d 78, 96 (2d Cir. 2001); see Fed. R. Crim. P. 12(b)(3)(B) (a motion alleging a defect in an indictment must be made before trial). Carpoccia's multiplicity argument was therefore waived.

4. Capoccia argues that there was no basis for a sentencing enhancement premised on obstruction of justice. A district court's application of the Guidelines is reviewed de novo. United States v. Hasan, 568 F.3d 161, 168 (2d Cir. 2009). "A sentencing enhancement for obstruction of justice is warranted when a defendant testifying under oath gives false testimony concerning a material matter with the willful intent to provide false testimony." United States

3

v. Dunnigan, 507 U.S. 87, 94 (1993) (quotation marks omitted). "If an accused challenges a sentence increase based on perjured testimony, the trial court must make findings to support all the elements of a perjury violation in the specific case." Id. at 96.

The key question, therefore, is whether the district court made adequate independent findings to support its finding of perjury. "[I]t is preferable for a district court to address each element of the alleged perjury in a separate and clear finding"; nevertheless, "a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury" is sufficient." Id. at 95.

That is what happened in this case. At the resentencing, the district court reviewed its view of Capoccia's obstruction, count-by-count. The court referenced specific instances where Capoccia's testimony was directly contradicted by the testimony of his former associates. See, e.g., Resentencing Hr'g Tr. at 140, ECF No. 711 ("Mr. Capoccia also denied that he ordered the Law Centers to stop refunding client money in late March 2001 . . . . [t]his testimony is directly contradicted by that of Mr. Sinnott and Mr. Forkey as well as Mr. Daly."). The court summarized that Capoccia's statements were "false, [material], and, if believed, would certainly have influenced the Jury." Resentencing Hr'g Tr. at 142, ECF No. 711. The district court closely followed Dunnigan. It made specific factual findings regarding Capoccia's perjurious statements and noted that the statements were regarding material issues in the case. The obstruction enhancement was therefore appropriate.

5. Capoccia similarly argues that the vulnerable victim sentencing enhancement should not have been imposed. He contends that the district court committed legal error by concluding that debt-reduction customers were vulnerable victims inherently. The Guidelines stipulate that a two-level enhancement is appropriate when a defendant "knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct . . . ." U.S.S.G. § 3A1.1(b)(1). We review the district court's application of the Guidelines de novo, Hasan, 568 F.3d at 168, and its factual finding that a

4

victim was vulnerable for clear error, United States v. Patasnik, 89 F.3d 63, 72 (2d Cir. 1996).

Capoccia argues that the enhancement required a showing that he had knowledge of the particular vulnerabilities of individual client victims, and he contends that he had not "singled out the vulnerable victims from a larger class of potential victims." See United States v. McCall, 174 F.3d 47, 50 (2d Cir. 1998). However, "many cases have upheld vulnerable victim enhancements based on group generalizations," id. at 51, especially in the present context of predatory financial schemes.

"False financial hope is promoted more easily to persons whose defenses have been lowered by anxiety and the prospect of ruin." Patasnik, 89 F.3d at 72. Thus, we have held that "an enhancement is particularly appropriate when . . . the success of the defendant's criminal scheme depended on the victim's financial desperation." United States v. Borst, 62 F.3d 43, 46 (2d Cir. 1995). To the extent that Capoccia was actually unaware of his clients' precarious finances, he should have known once they informed him of their debts. See Patasnik, 89 F.3d at 72. The district court did not commit clear error in finding that Capoccia's destitute customers were especially vulnerable.

6. Capoccia argues that the loss amount was incorrectly calculated by inclusion of more than $2,000,000 from events that predated the first transfer on the indictment, and were not associated with relevant conduct. This court reviews "the factual determinations underlying a district court's loss calculation at sentencing for clear error and its application of the Sentencing Guidelines de novo." United States v. Canova, 412 F.3d 331, 351 (2d Cir. 2005). "Although the district court's factual findings relating to loss must be established by a preponderance of the evidence, the court need not establish the loss with precision but rather need only make a reasonable estimate of the loss, given the available information." United States v. Uddin, 551 F.3d 176, 180 (2d Cir. 2009) (citations and quotations omitted).

"For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar

5

modus operandi." U.S.S.G. § 1B1.3 Application Note 9(A); see United States v. Walsh, 119 F.3d 115, 121 (2d Cir. 1997) (recognizing relevant conduct where scheme had common accomplice and "common modus operandi of false financial statements and false documentation"). The district court cited numerous trial evidence to support the finding that Capoccia's scheme started no later than 1998. This evidence included: documentation of the Law Centers' heavy losses in 1998-99, an unearned-retainer analysis by Agent Rachek, and testimony from former Chief Financial Officers Lynn Hill and Tom Juronski. This evidence shows that Capoccia had common accomplices, victims, and modus operandi that remained constant after the firm moved from Albany to Vermont. The district court did not commit clear error in finding that Capoccia's misappropriation of client funds while his company was based in Albany qualified as relevant conduct. Its loss calculation was therefore correct.

7. Capoccia argues that his trial counsel was ineffective for failing to object to those counts of the indictment for which venue did not lie in the District of Vermont. "In most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." Massaro v. United States, 538 U.S. 500, 504 (2003). The record on appeal is "not developed precisely for the object of litigating or preserving the claim and [is] thus often incomplete or inadequate." Id. at 504-05. We have already rejected such motion by Capoccia as premature. See United States v. Carpoocia, 354 F. App'x 522, 523 (2d Cir. 2009). Nothing has changed.

We have considered all of Capoccia's remaining arguments and find them to be without merit. Accordingly, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

6